W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL UNION NO. 125, INTERNATIONAL HOD CARRIERS', BUILDING AND COMMON LABORERS' UNION OF AMERICA, Defendant.

Civ. A. No. C 64-99.

United States District Court
N. D. Ohio, E. D.
Feb. 7, 1964.

Charles Donahue, Sol., James R. Beaird, Associate Sol., Aaron A. Caghan, Regional Atty., U. S. Department of Labor, John W. Douglas, Asst. Atty. Gen., Merle M. McCurdy, U. S. Atty., Elmer A. Giuliani, Asst. U. S. Atty., Harland F. Leathers, Atty., Department of Justice, for plaintiff.

Mortimer Riemer, Cleveland, Ohio, for defendant.

CONNELL, Chief Judge.

On February 7, 1964, the Secretary of Labor brought complaint against the defendant union under the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 519 et seq., 29 U.S.C.A. §§ 401–530, hereinafter referred to as LMRDA. The plaintiff seeks to void the election of officers in 1963, compel a new election under the aegis of the federal government, and to restrain those presently holding office from disposing of the assets of the union.

From the complaint, the allegations of which we must accept as true for the purposes of this motion, we recognize these uncomplicated facts which have brought this case here. On June 8, 1963, the union held an election; all offices were filled except that of Business Representative, where the vote ended in a tie. Consequently, a runoff election was held on July 13, 1963 for that office alone. After this election, a member in good standing (as yet unnamed) lodged a protest with the union against the conduct of that election. Having received a denial of his protest, he filed a timely complaint with the Secretary of Labor, alleging violations of 29 U.S.C.A. § 401. After investigation and consideration, the Secretary instituted this action which complains not only of irregularities in the conduct of that run-off election, but also attacks the first election.

The defendant now moves to dismiss that portion of the complaint which is directed to the election of June 8, 1963, on the ground that the statute (29 U.S.C.A. § 482(a) [1]) permits suit by the Secretary only at the instance of a complaining member who has exhausted his internal avenues of protest. There is no allegation that a member complained internally about the conduct of that June 8 election. The plaintiff resists the motion on three grounds: (1) that the run-off election was such an integral part of the whole election that complaint against it reaches to the entire election; (2) the legitimate inquiry by the Secretary addressed to the election of July 13, 1963, uncovered irregularities which must be corrected in the interest of the public; (3) the exhaustion of remedies is not an absolute requirement, so the Court in its discretion is empowered to disregard the absence of internal attack upon the election of June 8.

We cannot agree with the Secretary that exhaustion of the member's right of protest within the union against the run-off election operates to bring the whole election under the scrutiny of the

[1] "§ 482. Enforcement—Filing of complaint; presumption of validity of challenged election

"(a) A member of a labor organization—

"(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide."

Secretary and the jurisdiction of this Court. The plaintiff argues strongly that the two polls are but two elements of a single transaction, so that attack by the member upon the balloting on July 13 is really an attack upon the entire election. To support this contention, the plaintiff directs the Court's attention to Webster's New Collegiate Dictionary 761 (1961), which defines "run-off" as "a final race, contest, or the like, to decide an earlier one that has ended without a decision in favor of any one competitor." Though this definition, and common sense, establish a strong logical relationship between these two polls, it must be remembered that the complaint is directed against the procedural *conduct* of the election. We cannot assume that on both occasions the identical procedure was utilized by the union. We cannot assume that the irregularity to which the member addressed his complaint about the run-off was present in the initial balloting. Nor can we assume that the member intended to complain about the whole election when he only notified the union that he was dissatisfied with the conduct of the run-off election. Thus the first ground advanced by the Secretary is untenable.

The second and third contentions proffered by the plaintiff are designed to elicit from this Court a favorable construction of § 482(a) in light of the permissive language contained in § 411(a) (4) of the statute. Section 411(a) (4) states that a member "may" be required to exhaust internal remedies before seeking enforcement of his rights in an administrative or legal proceeding. It is not wholly insignificant that earlier drafts of this "Bill of Rights" contained the word "shall" instead of "may". Cf. Legislative History of Labor-Management Reporting and Disclosure Act, P. 698, H.R. 8342, as reported U.S.Code Congressional and Administrative News, p. 2318.[2] In other words, the Secretary would have us read the permissive spirit of § 411, which is the heart of the Act,

into § 482, upon which this action is predicated.

As is often the case when a court is confronted with a new statute, our attention is directed to the situation which provoked the LMRDA and the deliberations of the legislative body which enacted the bill. This Act was the result of agitation for legal control over union leadership in order to preserve democracy within unions and to guarantee every union member the right to make his voice heard in the formulation of union policy. One of the most articulate pleas for such legislation was that of then Professor Archibald Cox. In his article "The Role of Law in Preserving Union Democracy", 72 Harvard Law Review 609, he specifically rejected one form of proposed legislation, then pending, which gave the government wide powers to regulate the internal affairs of unions:

> "The fundamental objection is that it would have turned over to an arm of the federal government the responsibility of carrying on the internal governmental processes of a labor union without any showing that the union officers and members were incompetent and corrupt. Such a measure does not promote freedom or democracy. It reduces self-government. It denies the private responsibility and self-determination which lie at the heart of a voluntary association." 72 Harv.L. Rev. 609, 630.

Commenting upon the problem which the instant case presents, Professor Cox stated:

> "Any member who can show that he has pursued in timely fashion the remedies available to him, within the union and any parent body, should be allowed to file a complaint with the Secretary of Labor alleging that a union election violated the statute. Requiring the exhaustion of internal remedies would preserve a maximum amount of independence and self-

2. The next version of the bill, H.R. 8400, substituted "may" for "shall". There is no explanation, however, for the change.

government by giving every international union the opportunity to correct improper local elections * *." Ibid., at 633.

Thus the commentator who urged most strongly the passage of the LMRDA viewed the exhaustion of internal remedies as an integral part of that bill.[3]

Investigation of the deliberations of Congress further illuminates the viability of the exhaustion doctrine. At no point did the legislators indicate a willingness to abrogate this traditional requirement in favor of summary action by the federal government; on the contrary, we are confronted at every turn with positive, unequivocal expressions of faith in the ability of unions to regulate their own affairs.

"In filing a complaint the member *must* show that he has pursued any remedies available to him within the union and any parent body in a timely manner. This rule preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections. *If* the member is denied relief by the union or can obtain no decision from the union one way or the other within 3 months, he may complain to the Secretary." S.Rep.No. 187 on S.B. 1555, p. 21; Legislative History of LMRDA, vol. I, p. 417 (emphasis added).

At least the Committee which drew up the report on the bill seemed to think that exhaustion was a condition precedent to action by the Secretary.

At another point in the report, the Committee again expressed its reticence to shackle labor relations with further encumbering interference by the government.

"The provisions of the bill are not to be interpreted as taking the place of, or excusing noncompliance with established standards of proper conduct or any voluntarily adopted labor or management ethical practices code. Nor are they to be interpreted as precluding further voluntary action * * *. The committee is convinced that rigid governmental controls should be avoided if it is at all possible to do so. It is also convinced that labor and management have considerable capacity to regulate their own affairs through their own voluntary actions." S.Rep., supra, p. 23; Legislative History, supra, p. 419.

Thus we are forced to agree with the statement of Judge Wilson in McGraw v. United Association of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry, 216 F.Supp. 655, 660 (E.D.Tenn., S.D.1963), that the exhaustion of remedies requirement is based upon a Congressionally approved policy of affording unions the opportunity of correcting their own errors and encouraging union responsibility, initiative and self-discipline. In other words, a complaining member must first seek redress from his peers before inviting the Government to champion his cause.[4]

With this background, we address the other two objections of the plaintiff. The second objection, i. e., that the public interest demands correction of abuses uncovered in the June 8 election, is closely related to the first contention. The secretary seems to say that once he has the right to investigate and correct by suit any aspect of any union election, this grants him *carte blanche* authority to reach all aspects of a union's election procedures. But in this, he fails to dis-

3. For a contrary view concerning internal remedies, see Montemuro, "The Doctrine of Exhaustion of Union Remedies", 2 Duke B. J. 148 (1952). The author's principal objection, however, is directed against dilatory tactics by the union after it has disciplined a member; that is not our problem.

4. The court has searched unsuccessfully for any authoritative source in which the exhaustion doctrine has been disparaged or in which it is suggested that courts may disregard it. Cf. Symposium on the Labor-Management Reporting and Disclosure Act 138, 259, 284, 333–336, 505.

tinguish between his right to investigate under the Act and his standing to sue under the Act.

■ The Secretary is granted broad *investigatory* powers, under 29 U.S.C.A. § 521,[5] to delve into union election procedure; there is no requirement that the investigation be preceded by a request from a dissatisfied member. In advancing his second objection to the defendant's motion to dismiss, the plaintiff would have us read the permissive scope of inquiry in § 521 into 482 because the public policy which prompted the inclusion of § 521 in the Act would best be served in this manner. He seeks, in effect, legislation by judicial edict.

To support this contention, the plaintiff cites Wirtz v. Local 191, International Brotherhood of Teamsters, etc., 218 F. Supp. 885 (D.C.Conn.1963), where the Secretary moved to enforce a subpoena duces tecum which had been served on a union pursuant to an investigation under § 521. The union resisted the subpoena on the ground that, since action by the Secretary to secure judicial remedy against an election is conditioned upon complaint by a member who has exhaust-

ed internal remedies, and no such showing had been made, the Government should be denied access to union records which might have importance in a subsequent suit. As the Court phrased the question:

> " * * * must it be shown that the conditions precedent to the filing of a complaint with the Secretary have been fulfilled in order to permit an investigation by the Secretary and his use of the subpoena power to implement that investigation?" 218 F.Supp. 885, 886.

In overruling the union's objection, the Court recognized the basic differences between the two provisions: § 482 permits *challenge* of an election by resort to court, while § 521 permits *investigation* of an election. The right to investigate is unfettered by the restrictions surrounding the right to sue.[6]

On appeal the Second Circuit Court clearly analyzed the two sections in affirming the decision of the lower court. In dismissing the attempt by the union to read the restrictions of § 482 into § 521, the Court had no difficulty in reconciling the two sections because they are directed to two different objectives.

5. "§ 521. Investigations by Secretary; applicability of other laws

"(a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter (except subchapter II of this chapter) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.

"(b) For the purpose of any investigation provided for in this chapter, the provisions of sections 49 and 50 of Title 15 (relating to the attendance of witnesses and the production of books, papers, and documents), are made applicable to the

jurisdiction, powers, and duties of the Secretary or any officers designated by him."

6. The plaintiff relies upon this statement by the Court to support his argument that the interest of the public requires us to ignore the plain wording of the statute:

"But there is far more at stake in protecting democratic election procedures for all members * * * There is nothing ambiguous about the legislative policy in the Labor-Management Reporting and Disclosure Act to advance union democracy * * * Likewise it is clear from legislative history that Congress recognized that since the public interest in safeguarding and improving the electoral process exceeds even that of members, it might be unwise to place too much reliance on its members to vindicate that interest."

Not only is this statement totally unsupported by any reference to the legislative history upon which it purports to be founded, but it is pure dictum and of no avail to the plaintiff in this case.

"No conflict is created by reading Section 402 and Section 601 together. Section 402 provides for the Secretary's instituting an action in the courts in behalf of an individual who has complained of a violation of Title IV. Section 601 provides that the Secretary shall 'determine the facts relative' to a violation or threatened violation and that he may report the results of his investigation 'to interested persons or officials.' It may be that some or all of the limitations of Section 402, such as the exhaustion of internal remedies, are relevant to the suit which that section authorizes; there is in Section 601 no similar limitation on the Secretary's power to investigate and report. Presumably the Secretary can bring an action only when a complaint has been filed by an individual member (Section 402). But he can investigate and report without such a complaint. The two sections of the statute can thus be read together and each be given full effect in complete harmony and without any trace of clashing purposes." 321 F.2d 445, 448.

This case, rather than support the plaintiff's position on this issue, proves fatal to his argument; in that case, we find a union espousing a position which is the counterpart of the Secretary's position in the instant case. Just as the Connecticut District Court and the Second Circuit Court refused to grant the union's request to read restrictions into § 521, we refuse to read those same restrictions out of § 482.

 In his solicitous pursuit of the public interest, the Secretary cites Goldberg v. Amalgamated Local Union No. 355, 202 F.Supp. 844 (E.D.N.Y.1962) to further the argument that the public interest permits him to allege violations of the Act not contained in the member's internal protest. But that Court explicitly stated that

"[o]nly after the member of the labor organization has exhausted the remedies available to him under the constitution and by-laws of the labor organization * * * does the right accrue to the Secretary of Labor." 202 F.Supp. 844, 846.

Plaintiff here invokes the doctrine of "public interest." Can we place this "public interest" of which the government is here so solicitous above the interest of the individual members of the union? Unions are voluntary associations, organized by workers to promote their common welfare. The sole reason for their existence is to advance the cause of the individual laborer by negotiating from a position of collective strength to secure favorable wages and working conditions. The individual members entrust this strength to the officers of the union, just as the members of this defendant union did by the election of June 8, 1963. It is highly significant that not one voice of protest has been heard from the membership against the conduct of that election. We do not think that the Secretary under the guise of "public interest" may be permitted to complain when the membership has not; to hold otherwise would, in fact, be inimical to true public interest because it would require legislation by judicial fiat. If the members are satisfied, then the government ought to be satisfied.

The third contention advanced by the plaintiff suggests that the Court may, in its discretion, ignore the requirement of internal exhaustion. We disagree. The cases where this has been done involved situations where the internal complaint was to be heard by those very people against whom complaint was to be made. Cf., e. g., Calagaz v. Calhoon, 309 F.2d 248 (5th Cir. 1962). This is but a further expression of a basic tenet of American jurisprudence—the law will not require a useless act. It is significant that the cited case and others like it do not involve actions brought by the Secretary under § 482. The Court finds, therefore, that it is without discretion to erase the explicit condition which Congress wrote into the statute.

 In addition to these affirmative attacks upon the doctrine of exhaustion

of remedies, the plaintiff suggests that the defendant should be estopped from asserting the failure of this condition precedent. Since the union had been directed to investigate a complaint about the July 13 run-off, it is argued, it should then have investigated the election of June 8. We disagree, for the simple reason that no one asked for such an investigation. The purpose of retaining the exhaustion requirement in the LMRDA is to afford the union the first opportunity to police its own behavior; if no complaint is heard, however, no investigation is launched. The statute (29 U.S.C.A. § 482(a) (2) permits courts, when suit is brought, to presume that an election is valid until the contrary be proven. Thus the burden of proof and the risk of persuasion must be borne by the party which attacks an election. By analogy the union itself should be entitled to make that same presumption; the union can presume that its procedure is correct and need not investigate unless and until a member complains. Thus we hold that the union was not required to investigate the election of June 8, and the union is not estopped from asserting the failure of a condition precedent to the Secretary's complaint against that election.