**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL UNIONS NO. 406, 406-A, 406-B AND 406-C (HOISTING AND PORTABLE), INTERNATIONAL UNION OF OPERATING ENGINEERS, Defendant.**

Civ. A. No. 14573.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 19, 1966.

---

Beate Bloch, Nathan Rachael, Attys., Dept. of Labor, Frederick W. Veters, Asst. U. S. Atty., for plaintiff.

Dodd, Hirsch, Barker & Meunier, Thomas J. Meunier, New Orleans, La., for defendant.

AINSWORTH, District Judge:

The Secretary of Labor brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481 et seq.) to set aside an election of officers held by defendant union in June 1963. The Secretary challenges the election on the basis of alleged violations of Section 401(e) of the Act, which allegations pertain to qualification of members as candidates for union office. The Secretary contends that defendant imposed unreasonable restrictions which had the effect of denying its members a reasonable opportunity for the nomination of candidates and of depriving them of their right to vote for or support candidates of their choice, and that the imposition of such unreasonable restrictive qualifications "may have affected the outcome" of the election within the meaning of Section 402(c) of the Act.

Defendant, Local Unions No. 406, 406-A, 406-B and 406-C, International Union of Operating Engineers, has jurisdiction over the entire State of Louisiana. The parent local union is Local Union 406, which has three branches, Local Unions 406-A, 406-B and 406-C. The union denies that the qualifications on its members to be candidates for union office are unreasonable. It contends that in an investigation of its last previous election by the Secretary, no objection was made to any of these qualifications as being violative of the Act. Finally, the union contends that none of the alleged violations of the Act set forth in the Secretary's suit was specifically included in the internal union protest of the members or in the complaint filed with the Secretary to challenge the election; accordingly, that the express statutory requirement of Section 402(a) (1), that the member of defendant union must exhaust available internal union remedies before a complaint is filed with the Secretary, not having been complied with, the Secretary's suit should be dismissed.

In his suit the Secretary alleges violations of Section 401(e) in that the defendant imposed the following qualifications upon the right of its members in good standing to be candidates for and to hold union office:

(1) only members of the "parent Local Union" were eligible to be candidates for any office;

(2) only members who had paid all dues on or before the first day of each month during the year preceding the election were eligible to be candidates for any office (the continuous good standing requirement);

(3) only members who had maintained continuous membership in the Local for the five years preceding the election were eligible to be candidates for any of the five principal offices (i. e., President, Vice President, Recording-Corresponding and Financial Secretary, Treasurer, and Business Manager); and

(4) only members who had, on or before January 15, 1963, filed a declaration of intention to run for a particular office were eligible to be candidates for such office.

The net effect of these qualifications was that only 104 of defendant's 3,137 members in good standing were eligible to be nominated as candidates and to run for office in the election; only 3 per cent of the union's membership was thus eligible to become candidates for office.

Shortly after the election several of defendant's members in good standing, including one Max Rogers, protested the conduct of the June 1963 election to the union. (See Exhibit Q.) The protest, in writing, was directed to the union's procedures in distributing and counting ballots, to campaigning by the Business Manager and his assistants on union time and using union funds, to lack of adequate precautions to safeguard the ballots returned by the members, and the protest concluded: "These being only a

few of the many irregularities that took place during the recent election, * *." The complaint to the Secretary (Exhibit T) was timely filed, in writing, by Max Rogers only, but without specification, except to state that "not being able to get any action as to the contest within our organization, we make this appeal to the Sec. of Labor for assistance in regards to the contest of this election." The Secretary, having found probable cause that Title IV of the Act had been violated through the imposition of the restrictive qualifications on candidacy already enumerated, then brought this action.

None of the acts complained of by the members in their internal protest to the union is the subject of the present suit. The Secretary's alleged violations of the Act by defendant are wholly new, and are not mentioned or referred to in any manner in the internal protest of union members. The Secretary's allegations refer to completely different violations from those complained of by the members, and all of the Secretary's specifications relate to the claim that the union has imposed unreasonable qualifications for candidates.

Section 401(e) accords to every member in good standing the right to be a candidate and to hold office subject only to "reasonable qualifications uniformly imposed." In our view most of the restrictive qualifications imposed by the union are unreasonable and arbitrary and had the effect of severely limiting the right of members in good standing to be candidates for union office. They, therefore, were in violation of this section of the Act.

The continuous good standing requirement that only members who had paid all dues on or before the first day of each month during the year preceding the election were eligible to be candidates for any office is arbitrary and unreasonable. It had the effect of excluding the vast majority of the membership from being candidates for office, providing no grace period for delinquency, and denying a member the right to run for office if he is even one day late on one occasion within the twelve months preceding the election. See Wirtz v. Local Union No. 9, International Union of Operating Engineers, 254 F.Supp. 980 (D.C.Colo., 1965). Defendant's members do not lose their good standing as members of the union by failing to make prompt dues payments for they have a ninety-day grace period before being suspended for nonpayment. The requirement of continuous good standing for twelve months relates only to eligibility for union office. The evidence shows that the International Union of Operating Engineers is the only one of 73 national unions whose constitutions were studied and analyzed by the Secretary's witness, August Cantfil, Assistant Chief of the Division of Research and Analysis, Labor-Management Services Administration, United States Department of Labor, which has such a continuous good standing requirement for the purpose of eligibility for candidacy for office. It is the most stringent dues-paying requirement imposed by any major labor organization as a qualification on candidacy.[1]

When only 104 of the defendant's 3,137 members have such continuous good standing so as to be eligible for office, the oppressive nature of the restriction

---

1. Defendant contends that the witness Cantfil's testimony with accompanying exhibits is of little value to the Court because it analyzes only the *international* union constitutions on file with the United States Department of Labor and that there are many thousands of *local* constitutions whose provisions were not analyzed and whose constitutions might or might not have such restrictive provisions. Mr. Cantfil's analyses are not con-

trolling *on the Court* but they are highly persuasive and entitled to great weight. The 73 constitutions analyzed include those of all national labor organizations having one or more affiliated local unions subject to the Act and having 40,000 members or more. These labor organizations have a total of 16,000,000 members or 90% of the total membership of all national labor organizations in the United States.

on qualifications is evident. Cf. Goldberg v. Amarillo General Drivers, Etc., Local U. No. 577, N.D.Tex., 1963, 214 F.Supp. 74; Wirtz v. Local 153, Glass Bottle Blowing Ass'n, W.D.Pa., 1965, 244 F.Supp. 745. See also interpretation by the United States Department of Labor (29 C.F.R. § 452.7(b)).

■ The five years' continuous membership requirement for major office, such as President, Vice President, etc., is likewise excessive and unreasonable. Of the 73 national union constitutions analyzed by Mr. Cantfil, none required more than three years' membership to run for major union office and most required much less. The published interpretation by the United States Department of Labor (29 C.F.R. § 452.7 (b)), which contemporaneous construction is entitled to great weight,[2] considers any requirement beyond three years' good standing membership to be an unreasonable qualification. We agree.

■ The union's declaration of candidacy requirement is also unreasonable. Candidates for the June 1963 election were restricted to members who had on or before January 15, 1963, nominated themselves by filing a declaration of intention to run for a particular office. Though nomination meetings were held by defendant in May 1963, only those names of declarants by the self-nominating procedure which were filed on or before January 1963 could be nominated. No opportunity was given for the nomination of a candidate in any other way. This procedure unduly restricts the right of members in good standing to become candidates and denies completely the right of the membership at large to nominate candidates of their choice. We agree that the requirement serves no reasonable purpose. See Wirtz v. Local 30, International Union of Operating Eng., S.D.N.Y., 1965, 242 F.Supp. 631. The Cantfil study shows that the Operating

Engineers is the only major union of the 73 national labor organizations analyzed which has such a requirement in its national constitution.

■ As to the restriction of candidate to parent Local Union members, we find that of the union's 3,137 members in good standing at the time of the election, 2,446 were members of the parent Local Union (Local 406) and the remaining 671 were members of branches (Local 406–A, 406–B and 406–C); 497 of the 671 branch members were members of Local 406–A and were considered to be apprentice engineers or mechanics. Only 154 members belonged to Local 406–B; they were journeymen operating engineers in the highway and heavy construction field who were admitted to membership at a lower initiation fee but who may transfer membership to the parent Local Union on payment of the full initiation fee. Only 20 members belonged to Local 406–C, these being permanently employed in gravel pits in a type of work where the dues and initiation fees are nominal and the conditions of employment generally different from those of the other members. The Cantfil study discloses that it is not unusual for unions to exclude apprentice or unskilled workers from office holding. Under the circumstances we do not believe the Secretary's objection to be valid or sufficient to warrant our interference in such a restriction.

■ Restrictions of the kind which we hold to be violative of Section 401(e) of the Act definitely "may have affected the outcome" of the election within the meaning of Section 402(c) (29 U.S.C. § 482(c)) of the Act. Where restrictions on candidacy reasonably deprive the substantial majority of the membership of the right to be candidates for union office, there is little question that they "may have affected the outcome" of the election. The word "may" indicates the necessity only for a showing of a rea-

2. United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Norwegian Nitrogen Prod. Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 276 (1933).

sonable possibility that the violation would affect the outcome.

■■■ Despite our opinion that defendant has imposed unreasonable qualifications on its members for candidacy to union office, we are compelled to deny the Secretary's request to set aside the June 1963 election for the reason that one of the indispensable prerequisites to such relief, exhaustion of available internal union remedies, has not been complied with as required by the Act. Section 402(a) provides that "[a] member of a labor organization who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body * * * may file a complaint with the Secretary * * * alleging the violation of any provision of Section 401." The evidence shows that none of the specifications of violation of the Act set forth in the Secretary's suit was complained of in the internal protest made by the union's members preliminarily to filing of a complaint with the Secretary. The Secretary urges that we hold that once a member or members protest an election to the union and file a timely complaint with the Secretary, the Secretary is not restricted by the scope of the complaining members' internal protest. The Secretary argues that the filing of the complaint under Section 402(a) of the Act "simply triggers an investigation" by the Labor Department and authorizes him to file suit "if he finds probable cause to believe that a violation of this title has occurred." The Secretary interprets this to mean that he may bring a civil action based on *any* violation of Title IV and not merely on the basis of the violations previously charged by the complaining union member. He states that it is wholly unrealistic to restrict the litigation to the particular matters protested by the individual complainant. However, none of the matters which the Secretary alleges in this suit was complained of by the member or members in the internal protest to the union. Therefore, the express statutory requirement of exhaustion of remedies by the member of the labor organization has not been complied with. Congress must have intended the Act to have effect as it is written; we cannot change the plain language of the statute and substitute the Secretary's opinion or our own by judicial fiat in the face of the clear language of the statute. No member of the union has protested the restrictive qualifications on candidacy imposed by the union in the June 1963 election; and though we are in agreement with the Secretary that these restrictions are unreasonable, arbitrary and in violation of the Act, it is clear to us that it was the intention of Congress in passing the Act to require exhaustion of internal union remedies as Section 402(a) expressly provides, failing in which the Secretary's suit challenging the election could not be sustained. See Wirtz v. Local Union No. 125, Internat'l Hod Carriers', Etc., N.D. Ohio, 1964, 231 F.Supp. 590; Wirtz v. Local Union No. 9, International Union of Operating Engineers, 51 L.C. ¶ 19,579 (D.C.Colo., 1965); Wirtz v. Local Union 169, International Hod Carriers, Etc., D. Nevada, 1965, 246 F.Supp. 741; Professor Archibald Cox, "The Role of Law in Preserving Union Democracy," 72 Harv. L.Rev. 609 et seq.[3]

As Chief Judge Connell pointed out in Wirtz v. Local Union No. 125, supra, the legislative history supports the view that the members are required to exhaust internal remedies before seeking enforce-

---

**3.** Professor Cox stated in his article (p. 633):

"Any member who can show that he has pursued in timely fashion the remedies available to him, within the union and any parent body, should be allowed to file a complaint with the Secretary of Labor alleging that a union election violated the statute. Requiring the exhaustion of internal remedies would preserve a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections. * * *."

ment of their rights in a complaint to the Secretary.[4]

In Wirtz v. Local Union 169, supra, Judge Thompson likewise held that "the express statutory requirement of exhaustion of internal union remedies must be given effect." Judge Thompson also said (246 F.Supp. p. 752):

"The act should be construed to mean that the Secretary has, on complaint of a union member, the right to investigate all aspects of the contested election and to base a complaint to the Court on every issue which the defendant union had a fair opportunity to consider and resolve in connection with any member's appeal to the General Executive Board of the union."

Judge Thompson concluded in Wirtz v. Local Union 169, supra (p. 753):

"The only issue not presented by the appeals to exhaust internal remedies, as we analyze the evidence, is the present claim by the Secretary that members residing at a distance were not given a reasonable opportunity to vote because alternate polling places close to their homes or mail ballots were not provided. As to this claim, the statutory predicate of exhaustion of union remedies has not been established and the Secretary cannot rely upon it as a basis for declaring the election void." [5]

We are informed that the union machinery has been set in motion for the election to be held in August 1966. Though we are of the opinion that certain of the restrictive qualifications violate the Act, we have no authority to enjoin the forthcoming election if it is not being held in conformity with the views we have expressed in this opinion. The remedy under Section 402(a) is declared by Section 403 to be exclusive and consists in the challenge by the Secretary of an election already conducted. There is no authority in the Act for the granting of an injunction in connection with the forthcoming 1966 election under the circumstances here. See Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Nevertheless, if the union persists in retaining the restrictive qualifications which violate the Act, a member or members would have good cause to contest the 1966 election and have it set aside because the violations of the Act would undoubtedly affect the outcome of the election, provided of course available internal union remedies are exhausted. The right is reserved to the membership of the union to protest the forthcoming election in the manner set forth in Section 402(a) on the basis of the unreasonably restrictive qualifications for candidates if in fact election is conducted again under such restrictions. On the Secretary's complaint we would be compelled to set aside the union election under such circumstances.

Judgment will be rendered, therefore, in accordance with this opinion.

---

4. " 'In filing a complaint the member *must* show that he has pursued any remedies available to him within the union and any parent body in a timely manner. This rule preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections. *If* the member is denied relief by the union or can obtain no decision from the union one way or the other within 3 months, he may complain to the Secretary.' S.Rep.No.187 on S.B. 1555, p. 21; Legislative History of LMRDA, vol. I, p. 417. (emphasis added)."

5. Opposed to these views are four unreported district court decisions, without opinion, which the Secretary states are holdings that internal remedies need not be exhausted with respect to all the allegations in the Secretary's complaint: Wirtz v. Local 11, Hod Carriers, U.S.D.C., W.D.Pa., CA No. 60676, decided September 12, 1961, unreported; Goldberg v. District Council No. 21, Painters, U.S.D.C., E.D.Pa., CA No. 30371, decided March 30, 1962, unreported; Wirtz v. Local 611, Hod Carriers, U.S.D.C., D. Conn., CA No. 9512, decided July 31, 1963, unreported; Wirtz v. Local 191, Teamsters, U.S.D.C., D.Conn., CA No. 9776, decided March 31, 1964, unreported. There is no circuit court decision or other precedent available to us except those noted.