Alexis M. HERMAN, Secretary of Labor, U.S. Department of Labor, Plaintiff,

v.

**SINDICATO DE EQUIPO PESADO, Defendant.**

No. CIV. 97–2071(JAF).

United States District Court, D. Puerto Rico.

Dec. 22, 1998.

Evan R. Barouh, U.S. Department of Labor, Office of the Solicitor, Reg. II, New York, NY, Agnes I. Cordero, U.S. Atty's Office Dist. of PR, Criminal Div., Hato Rey, PR, for plaintiff.

Ana R. Biascoechea, Hato Rey, PR, Jose E. Carreras–Rovira, Hato Rey, PR, for defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Secretary of the United States Department of Labor, brings this action against Defendant, Sindicato de Equipo Pesado ("Sindicato"), for violation of Title VI of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), Act of September 14, 1959, 73 Stat. 519, 29 U.S.C. § 481, by imposing unreasonable candidacy qualifications in a January 1997 union election. Plaintiff invokes the jurisdiction of this court pursuant to section 402(b) of the LMRDA, 29 U.S.C. § 482(b).

### I.

### Factual Background

Defendant Sindicato, a Puerto Rico labor union, conducted an election of officers on January 26, 1997. This election was subject to the provisions of Title VI of the LMRDA as Sindicato is a union organized pursuant to sections 3(i), 3(j), and 401(b) of the LMRDA, 29 U.S.C. §§ 402(i), (j), and 481(b).

Sindicato's constitution and bylaws impose candidacy requirements upon members wishing to hold office in the union. Article XI § 6 states that, "members with less than 1 year of being affiliated [with the union] may not be nominated for positions on the Board of Directors." *Docket Document No. 11, Exh. F.* To become affiliated with Sindicato, Article IV § 3 requires each member to "pay a $100.00 affiliation fee." *Docket Document No. 11, Exh. E.*

Prior to the January 1997 election, Sindicato held a nominations meeting in November 1996. At this meeting, José Cátala, among others, was nominated for President of the Board of Directors. Following this meeting, on December 2, 1996, two union members filed a protest letter to Sindicato's Elections Committee opposing the candidacy of Mr.

Cátala and ten others because they had not been affiliated with the union for a period of one year prior to nomination. The Elections Committee held a hearing and ruled that Mr. Cátala was disqualified from the January 1997 election due to non-compliance with the candidacy affiliation requirements. The Elections Committee notified Mr. Cátala of its determination and his right to appeal the decision before the United States Department of Labor, in a letter dated January 4, 1997. *Docket Document No. 11, Exh. N.*

Following the election, on February 12, 1997, Mr. Cátala filed an election protest with Sindicato's President, Jesús M. Agosto. On February 14, 1997, Mr. Agosto sent a letter to the Department of Labor advising that he was forwarding Mr. Cátala's protest to Sindicato's Election Committee. On May 16, 1997, Mr. Cátala filed a complaint with Plaintiff, Secretary of Labor, pursuant to section 402(a)(2) of the LMRDA. 29 U.S.C. § 482(a)(2).

Plaintiff investigated Mr. Cátala's complaint and found probable cause to believe that Sindicato's January 1997 election violated Title VI of The LMRDA and had not been remedied. 29 U.S.C. §§ 482(b) and 521. Plaintiff alleges that Defendant, in conducting the January 1997 election, violated section 401(e) of the LMRDA,[1] 29 U.S.C. § 481(e), by (1) denying members in good standing the right to be candidates and run for office through its imposition of an unreasonable candidacy qualification; and (2) failing to uniformly impose the candidacy qualification. Plaintiff maintains that the violation of section 401(e) of the LMRDA likely affected the outcome of the January 1997 election for all offices.

Plaintiff requests (1) a declaratory judgment that the January 1997 is null and void for all offices; (2) an injunction directing Defendant to conduct a new election under the Supervision of Plaintiff for all offices; (3) costs of maintaining this action; and (4) any such other relief that the court should deem appropriate.

Plaintiff subsequently moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant responded by opposing Plaintiff's motion for summary judgment and moving for summary judgment.

## II.

### *Summary Judgment Standard*

The familiar purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and courts "must view the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable

---

1. Section 401(e) states:
   [E]very member in good standing shall be eligible to be a candidate and to hold office

subject to … reasonable qualifications uniformly imposed.

inferences in his favor." *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir.1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

### A. Exhaustion of Internal Union Remedies

Plaintiff alleges that complainant Cátala properly invoked and exhausted all internal union remedies before proceeding to take his claim to the Department of Labor. To the contrary, Defendant maintains that Plaintiff neither invoked nor exhausted all internal union remedies prior to filing his claim.

■■■■ Under section 402 of the LMRDA, any labor union member who has exhausted "the remedies available under the constitution and bylaws" or who has "invoked such available remedies without obtaining a final decision" within three months has one additional month to file a complaint with the Secretary of the Department of Labor alleging a violation of section 401 of the LMRDA. 29 U.S.C. § 482(a). If the union's constitution and bylaws fail to contain express procedures by which members can challenge election procedures, sending a protest letter to the union president constitutes invocation of internal remedies. *See Donovan v. Sailors' Union of the Pacific*, 739 F.2d 1426 (9th Cir.1984) (holding that where union constitution did not expressly provide for procedure which members could use to challenge elections results, sending protest letter to union president was reasonable attempt to invoke internal remedies). One court has held that an unsuccessful candidate exhausted internal union remedies where he timely protected the election before the union's general executive board which rendered a written, binding rejection, even though union's international convention, which meets only once every five years, had power to overturn board's decision. *DeArment v. Local 563, Laborers Intern. Union of North America*, 751 F.Supp. 1364 (D.Minn.1990) (stating that there was an unreasonable barrier to judicial relief when a candidate was forced to wait years in order to pursue appeal of board's decision). However, the mere fact that internal remedies may be uncertain does not justify a member's failure to pursue any possible re-medial action. *Wirtz v. Great Lakes Dist. Local No. 47, Intern. Organization of Masters, Mates and Pilots*, 240 F.Supp. 859 (N.D.Ohio 1965) (holding that fact that internal union remedies are uncertain or unknown to union member does not mean that such member need not seek to find out what remedies, if any, are available to him).

■■■ In this case, Sindicato's constitution and bylaws fail to proscribe express procedures for election challenges and complainant was therefore left with no specified course to follow. However, he did voice his dissent. First, Mr. Cátala protested in a hearing before the Union Elections Committee on December 13, 1996. The UEC ruled that Mr. Cátala was ineligible to run for president in the January 1997 election because he had not been affiliated with the union for the requisite year period prior to the election. On January 4, 1997, Mr. Cátala received a letter from the UEC to this effect that also advised Mr. Cátala of his right to appeal the UEC's ruling to the Department of Labor. Mr. Cátala's second attempt to obtain internal union relief was a post-election protest letter addressed to Sindicato president Agosto. In the February 12, 1997 letter, Mr. Cátala protested his disqualification from the January 1997 election. Two days after receipt of the February 12 protest letter, Sindicato president Agosto sent a letter to the Department of Labor indicating that he forwarded the letter to the UEP. Mr. Cátala received no response to the February 12 letter and, thus, filed a complaint with the Secretary of Labor on May 16, 1997.

We find that complainant Cátala properly invoked and exhausted all internal union remedies available to him. At every stage in these proceedings, Mr. Cátala lodged protests to his disqualification. Upon disqualification, he appeared before the UEP to challenge the ruling. Then, following the election, he lodged a protest with Sindicato's president. In both instances, Cátala received a response from Sindicato advising him of his right to seek relief from the Department of Labor. Mr. Cátala heeded this advice. We, therefore, find that complainant Cátala has exhausted his internal union remedies.

## B. Timely Filing of Complaint and Institution of Investigation

Plaintiff alleges that complainant Cátala timely filed his complaint with the Secretary of Labor who, in turn, instituted the investigation in a timely manner. Defendant argues, to the contrary, that neither Cátala nor the Secretary of Labor acted within their applicable statutory time periods.

Under section 402 of the LMRDA, a member who has invoked available union remedies and fails to receive a final decision within three calendar months has one month to file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a)(2). The Secretary then has sixty days from the date the complaint was filed to bring an action against the union in district court. *Id.* at § 482(b).

Complainant Cátala filed his complaint with the Secretary of Labor on May 16, 1997 and the Department of Labor began its investigation on July 14, 1997. The relevant inquiry is whether these dates are within the statutory time periods. In complainant Cátala's case, we find that he met the requisite time limitations. On January 4, 1997, complainant received the UEC letter denying his disqualification protest. He then waited until February 12, 1997, after the elections, and filed a protest to Sindicato president Agosto. Complainant never received an answer or final determination to this protest. Furthermore, the UEC letter of January 4, 1997 advised Cátala that its decision was appealable to the district court. Thus, Cátala waited for the requisite period of three months without receiving a final determination from Sindicato before filing his complaint with the Department of Labor. He also filed his complaint within the one-month time period for initiating such protests under the LMRDA. We, therefore, find that Complainant Cátala timely filed his complaint with the Secretary of the Department of Justice. *See Sailors' Union*, 739 F.2d at 1426 (holding that complaint of member who had reasonably attempted to invoke union remedies and did not obtain final decision within three months which concerned voting and candidate eligibility requirements, and which was filed within one month thereafter, was timely under 29 U.S.C. § 482(a)(2)).

The Secretary of Labor had, sixty days from the filing of Cátala's complaint to initiate an investigation. 29 U.S.C. § 482(b). The time for filing complaint with the Secretary of Labor regarding a nomination or election process does not start to run until after election is held. *Shultz v. United Steelworkers of America, AFL–CIO–CLC (Dist.19)*, 319 F.Supp. 1172 (W.D.Pa.1970). Complaints by union members concerning union elections are "filed" when received by Secretary. *Id.* In this case, the Secretary had until July 16, 1997 to file a complaint. Plaintiff filed the present complaint on July 14, 1997, two days before the statutory period ended. Accordingly, we find that Plaintiff Secretary of Labor timely commenced this action.

## C. Violation of Section 401(e) of the LMRDA

Plaintiff alleges that Defendant violated section 401(e) of the LMRDA by denying members in good standing the right to be candidates and run for office by imposing an unreasonable candidacy requirement. 29 U.S.C. § 481(e).

Section 401(e) of the LMRDA states in relevant part:

> In any election required by this section ... a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications uniformly imposed).

However, "Congress plainly did not intend that the authorization ... of 'reasonable qualifications ....' should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording ...." *Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 308, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977) (quoting *Wirtz v. Hotel, Motel and Club Employees Union, AFL–CIO, Local 6*, 391 U.S. 492, 499, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968)). "Reasonableness", in the context of section 401(e), is "measured in terms of its consistency with the LMRDA's command to unions to conduct 'free and democratic' union elections." *Hotel*

*Employees,* 391 U.S. at 499, 88 S.Ct. 1743. In enacting the LMRDA, Congress seemed to be heeding the venerated words of Lord Acton, "power tends to corrupt and absolute power corrupts absolutely," as the LMRDA addresses not only corrupt union leadership, but also the potentiality for abuse by benevolent leaders. In *Hotel Employees,* the Supreme Court expressly held that candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents are unreasonable. *Id.* at 502, 88 S.Ct. 1743 (invalidating candidacy requirement that only former office holders could run for certain positions rendering 93% of union members ineligible for office); *see also Usery,* 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (holding provisions limiting eligibility requirements to members who had attended at least one-half of regular meetings of local union for three years prior to election which excluded 96.5% of the union membership unreasonable under section 401(e)). As to the reasonableness of union dues under section 401(e), one case held that the eligibility requirement restricting candidacy to members who had paid membership dues by or on the first of each month for the year prior to the election was arbitrary and unreasonable because the effect was to excluding majority of the members. *Wirtz v. Local Unions No. 406, 406–A, 406–B and 406–C (Hoisting and Portable), Intern. Union of Operating Engineers,* 254 F.Supp. 962 (E.D.La.1966).

█ In the present case, we are dealing with provisions of Sindicato's bylaws that deny eligibility to run for office to members who have not been affiliated with the union for more than one year. *Docket Document No. 11, Exh. F.* Affiliation consists of paying a $100 fee. *Id.* In essence, Sindicato's requirement boils down to a filing fee for candidacy eligibility that needs to be filed over one year before an election. This requirement has no bearing on the fitness of a candidate to run for office nor is it directly related to a member's ability to serve as an officer. Even Sindicato has not claimed that members who have paid the requisite affiliation fee are more qualified for office-holding positions. *See, e.g., Hodgson v. Local Unions No. 18, Intern. Union of Operating Engineers,* 440 F.2d 485 (6th Cir.1971) (holding

that union constitutional provision precluding members who had not paid requisite fee to transfer from branch locals to a parent local from running for office unreasonable under § 401(e)). Additionally, Sindicato's provision precludes 98% of Sindicato's membership from running for union office irrespective of their fitness for the position. We find this inconsistent with Congress' intent in drafting the LMRDA. Section 401(e) of the LMRDA articulates Congress' intent:

> To protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership.

29 U.S.C. § 481(e). The principal aim of the LMRDA aim is to promote democracy in union governance. A pillar of that goal is that members are allowed to exercise their own judgment in selecting candidates for office. *Hotel Employees,* 391 U.S. at 504, 88 S.Ct. 1743. It follows that methods for choosing candidates for union offices which unduly interfere with members' free choice are unreasonable.

We are unpersuaded by Sindicato's arguments that the affiliation fee requirement is not unreasonable, since it has been in the Bylaws for over twenty years. While it is true that the provisions were on the books, never before were they enforced. In no previous election were candidates required to pay the affiliation fee or risk preclusion from running for office. In fact, complainant Cátala was a previous Sindicato union office holder who had never before paid an affiliation fee. "An essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement...." *Donovan v. CSEA Local Union 1000, American Fed'n of State, County and Mun. Employees,* 761 F.2d 870, 875 (2d Cir.1985). Qualifications must be spelled out specifically so that members can discern what is required to run for office and whether or not they are qualified. We find Sindicato's affiliation fee requirement to be unreasonable because, although the qualification was clearly stated, the selectivity of enforcement clearly runs counter to the aim of the LMRDA.

Continuing in this same vein, section 401(e) requires that candidacy requirements be imposed uniformly in order to be reasonable. Courts have struck down candidacy requirements because they could not be uniformly imposed. *See, e.g., Modern Drop Forge Co. v. Secretary of Labor*, 683 F.2d, 1105 (7th Cir.1982) (striking down requirement that candidates be screened for competency by election panel because it could not be uniformly enforced). In this case, Sindicato permitted one candidate, Bernabé Rodríguez, to run for office, although he had failed to meet the affiliation requirements of the bylaws. The reason given by Sindicato for this departure from the bylaws is that Rodríguez paid his affiliation fee five days after the cutoff date and that Sindicato made a "bona fide error" in letting him run for office. Sindicato has offered no other explanation for the difference in treatment of Rodríguez and Cátala or the other disqualified candidates. We find that Sindicato has failed to uniformly impose the affiliation fee candidacy qualification in the January 1997 election in violation of section 401(e) of the LMRDA.

We find that Sindicato's candidacy qualification requirement is unreasonable and, thus, constitutes a violation of section 401(e) of the LMRDA. We also declare the January 26, 1997 election null and void and order a new election to be conducted under government supervision, in accordance with section 402 of the LMRDA, 29 U.S.C. § 482(c). *See Marshall v. Local Union 12447, United Steelworkers of America, AFL–CIO*, 591 F.2d 199 (3rd Cir.1978) (holding that election was void where plaintiff made *prima facie* showing of section 401(e) violation which defendant offered no proof to rebut); *Dole v. Graphic Communications Intern. Union, AFL–CIO*, 722 F.Supp. 782 (D.D.C.1989) (holding that violation of LMRDA by unreasonably depriving members of the right to vote is *prima facie* grounds for believing the outcome of an election has been affected and setting aside the results).

### III.

#### *Conclusion*

We find that Defendant violated section 401(e) of the LMRDA and, therefore,

GRANT Plaintiff's motion for summary judgment. We, accordingly, **DECLARE** that the January 26, 1997 election is null and void, and **ORDER** a new election under government supervision pursuant to section 402(c) of the LMRDA.

**IT IS SO ORDERED.**