The judgment of the Bankruptcy Appellate Panel is therefore AFFIRMED.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

and

Peter Turner, Intervenor-Appellee,

v.

SAILORS' UNION OF THE PACIFIC, Defendants-Appellants.

No. 83–2523.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1984.

Decided Aug. 7, 1984.

Susan M. Webman, Dept. of Labor, Washington, D.C., for plaintiff-appellee.

Paul Alan Levy, Public Citizen Litigation Group, Washington, D.C., for intervenor appellee.

John F. Henning, Henning, Walsh & Ritchie, San Francisco, Cal., for defendants-appellants.

**1428**

Before HUG, TANG, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

The Sailors' Union of the Pacific conducted an election of officers from December 1, 1981 to January 31, 1982. Under the union's constitution, only those individuals who had been union members for three years or more were permitted to run for office or vote. Turner protested the election results by writing a letter to the President of the union. Approximately four months later, he filed a complaint with the Secretary of Labor under section 402(a) of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. § 482(a). The Secretary filed suit under the Act to challenge the union's voting and candidate eligibility requirements and the election results. The district court held that the three-year membership requirement was unreasonable and invalidated the election results. We affirm.

**TIMELINESS OF COMPLAINT**

■ The union argues that Turner's complaint to the Secretary was not timely. 29 U.S.C. § 482(a) provides that a union member:

(1) who has exhausted the remedies available under the constitution and by-laws ... or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter....

The union constitution does not expressly provide for a procedure which members may use to challenge election results. Article XIII, section 10 provides that the Balloting Committee must submit an election report to the membership which, if approved, conclusively establishes that the election was properly conducted. The report was approved on February 8, 1982. The union argues that Turner's failure to contest the election report and file a complaint with the Secretary within one month

of the approval of the report renders his complaint untimely. We reject the argument. Neither Article XIII nor any other provision of the constitution states that the procedure for challenging an election is to contest the Committee Report. Turner's failure to file a complaint within one month of the approval of the report does not render his complaint untimely.

On March 12, 1982, Turner filed a protest with the union President. The President replied on April 2, 1982, saying that he had forwarded the protest to the American Arbitration Association. On July 6, 1982, Turner filed a complaint with the Secretary of Labor. Turner argues that, in protesting to the President, he pursued the remedy available under Article XV, sections 2(a) and (d) of the union constitution. Section 2(a) provides that the President "shall represent the Union on all occasions where representation is required and not otherwise provided by the Constitution." Section 2(d) provides that the President "shall bring before the regular and special meetings such grievances as may have been reported to him by members...."

The union failed to satisfy its obligation of clearly providing a responsive procedure for members to contest election results. *See Wirtz v. Local Union 125, Laborers' Int'l Union of North America*, 389 U.S. 477, 484, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968). Turner therefore had no guidance on how to present his challenge. Sending the protest letter to the President was reasonable under the circumstances. When the President received the letter, the union was put on notice that Turner was protesting the election results. *See Schultz v. Local 1291, Int'l Longshoremen's Ass'n*, 429 F.2d 592, 597–98 (3d Cir.1970).

Since Turner reasonably attempted to invoke union remedies on March 12, 1982 and did not obtain a final decision within three months, he had one month thereafter within which to file a complaint with the Secretary. *See* 29 U.S.C. § 482(a)(2). His July 6, 1982 complaint was therefore timely filed.

## CANDIDATE ELIGIBILITY

■ The district court held that the union rule restricting candidate eligibility to those individuals who had been union members for three years was unreasonable and violative of 29 U.S.C. § 481(e). We review *de novo. Brennan v. Local 3489, United Steelworkers of America*, 520 F.2d 516, 523 (7th Cir.1975), *aff'd sub nom. Local 3489, United Steelworkers of America, AFL–CIO v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977).

■ 29 U.S.C. § 481(e) provides that "every member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications)...." The Supreme Court has twice considered the reasonableness of candidate eligibility requirements under section 481(e). In *Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), the Court held unreasonable a union rule limiting eligibility to members who had attended at least half of the local's regular meetings for three years prior to the election. In *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), the Court invalidated a union rule which limited eligibility for major elective offices to members holding elective office or who had previously held elective office. In both cases, the Court concluded that the antidemocratic effects of the rules outweighed the interests asserted in support of the rules. Although *Steelworkers* and *Hotel Employees* did not concern restrictions based on length of membership, they indicate that restrictions on candidate eligibility should be closely scrutinized. The "reasonable qualifications" limitation of 29 U.S.C. § 481(e) should not be given a broad reach. *Hotel Employees*, 391 U.S. at 499, 88 S.Ct. at 1748.

■ Whether a particular qualification is reasonable depends on its consistency with the purposes of the Act. *Steelworkers v. Usery*, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977). The Act was intended to prevent undemocratic practices in union government, including dictatorial and corrupt leadership and a disregard for the rights of the rank and file. *Hotel Employees*, 391 U.S. at 497, 88 S.Ct. at 1746. Congress decided that through free and democratic elections, union members could take the necessary steps to fight abuses of power by union leadership. *Wirtz v. Local 153, Glass Bottle Blowers Assn.*, 389 U.S. 463, 470–71, 88 S.Ct. 643, 647–48, 19 L.Ed.2d 705 (1968). Qualifications that unduly interfere with a free choice of candidates are at cross-purposes with the Act and therefore are unreasonable. *Donovan v. Local No. 120, Laborers' Int'l Union of North America*, 683 F.2d 1095, 1102 (7th Cir.1982).

■ We are guided also by the Secretary's regulation on eligibility restrictions. Under 29 C.F.R. § 452.37, a union may limit candidate eligibility to those individuals who have been union members for at least two years, but a longer membership requirement is impermissible. The Secretary's interpretative regulation is not binding, but is entitled to consideration. *See Usery v. Local Div. 1205, Amalgamated Transit Union*, 545 F.2d 1300, 1304 (1st Cir.1976); *Donovan v. Local 719, U.A.A.A. I.W. of America*, 561 F.Supp. 54, 57 n. 2 (N.D.Ill.1982); *but see Wirtz v. Local Union No. 406*, 254 F.Supp. 962, 966 (E.D.La. 1966) (candidate eligibility regulations entitled to great weight).

■ The three-year rule cannot be justified on the ground that it ensures that candidates will more likely be familiar with union members and union conditions. *See Marshall v. Local 1010, Int'l Brotherhood of Painters and Allied Trades, AFL–CIO*, 103 L.R.R.M. 3106 (M.D.Fla.1980). Although it may be desirable for candidates to know fellow members and be aware of union conditions, the three-year rule assumes that union members are unable to use their good judgment in electing officers. *See Wirtz v. Local Union 262, Glass Bottle Blowers Ass'n*, 290 F.Supp. 965, 968 (N.D.Cal.1968). This conflicts with the clear congressional intent that the good judgment of union members in casting their votes should be the primary determi-

nant of whether a candidate is qualified for office. See *Steelworkers v. Usery,* 429 U.S. 305, 312, 97 S.Ct. 611, 616, 50 L.Ed.2d 502 (1977).

The three-year requirement is inconsistent with the purposes of the Act and not in compliance with the Secretary's regulation. It unduly restricts the rights of members in good standing to become candidates and denies the right of the members to vote for candidates of their choice. See *Local Union No. 406,* 254 F.Supp. at 966. We hold that the rule is unreasonable.

The union's reliance on *Wirtz v. National Maritime Union of America,* 284 F.Supp. 47 (S.D.N.Y.), *aff'd on other grounds,* 399 F.2d 544 (2d Cir.1968), is misplaced. There, the court upheld a union rule restricting candidate eligibility for subnational office positions to individuals who had been union members for five years.[1] The court said that since the union had few lower level officers and no local branches, it could permissibly require that sub-national positions be held by longtime members. *Id.* at 62. The court also said that it would not interfere with the union's governance of its internal affairs where an overwhelming majority of members had adopted the five-year rule.

The rule in *National Maritime Union* is limited to that unusual factual situation. In contrast to the National Maritime Union, the Sailors' Union has many local branches. Its three-year rule restricts candidate eligibility for all offices. Thus, the asserted justification in *National Maritime Union* of having longtime members hold sub-national office is not present. Also, although the Sailors' Union recently passed the three-year rule in a constitutional referendum, we do not regard the rule as a clear indicator of members' wishes because none of the "permit members" was permitted to vote.

**VOTER ELIGIBILITY**

The union constitution provided that only those individuals who had been union mem-

bers for three years or more could vote in officer elections. The district court held that the rule was unreasonable and violative of 29 U.S.C. § 481(e). We agree.

The Act expressly guarantees union members the right to vote in union elections. See 29 U.S.C. §§ 411(a)(1), 481(e). Title IV of the Act was intended to ensure free and democratic union elections. See *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley,* — U.S. ——, ——, 104 S.Ct. 2557, 2565, 81 L.Ed.2d 457 (1984); *Steelworkers v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977). A major goal was to ensure full and active participation by the rank and file in the affairs of the union. *American Federation of Musicians v. Wittstein,* 379 U.S. 171, 182–83, 85 S.Ct. 300, 306–07, 13 L.Ed.2d 214 (1964). The three-year rule deprives some members of their right to vote, prevents democratic elections and seriously restricts participation by union members. We hold that the rule violates 29 U.S.C. § 481(e).

Our conclusion is supported by the Secretary's interpretative regulation on voter eligibility restrictions. 29 C.F.R. § 452.88 provides that a union may reasonably require a new member to remain in good standing for up to a year before being permitted to vote, but that a longer period is unreasonable. The union rule fails to comply with this regulation.

The union argues that the rule is necessary because the seaman's profession is heavily regulated. It points to Coast Guard regulations which require seaman competence. The union appears to be arguing that the three-year rule, by withholding full membership rights, encourages new members to remain in the union and thereby become competent seamen. This argument is without merit. The union has failed to demonstrate a connection between the three-year rule and seaman compe-

---

**1.** Although the five-year rule applied to candidates for subnational and national office, candidates for national office were also required to have held prior office. The district court held

that this prior office requirement was unreasonable. *Id.* at 66. The Second Circuit affirmed. *Wirtz v. National Maritime Union of America,* 399 F.2d 544, 550 (2d Cir.1968).

tence. The fact that an individual has been a union member for a specified period of time does not ensure that the member will be competent.

The union also argues that we are bound by *Goldberg v. Marine Cooks & Stewards Union*, 204 F.Supp. 844 (N.D.Cal.1962), in which the court upheld a union rule which conferred voting rights only on "full book" members who had acquired five years of experience at sea. *Marine Cooks*, however, is of little precedential value because it was decided prior to the many Supreme Court decisions emphasizing the Act's goals of free and democratic elections and broad member participation. *See, e.g., Crowley, supra; Steelworkers, supra; Federation of Musicians, supra.*

In affirming the district court decision, we need not address Turner's argument that a union member has an unqualified right to vote in officer elections and that all voting restrictions violate the Act. We hold only that the Sailors' Union's three-year rule violates 29 U.S.C. § 481(e).

AFFIRMED.