William E. BROCK, Secretary of
Labor, United States Department
of Labor, Plaintiff,

v.

LOCAL 471, HOTEL, MOTEL & RES-
TAURANT EMPLOYEES & BAR-
TENDERS UNION, AFL–CIO, Defen-
dant.

No. 85–CV–1521.

United States District Court,
N.D. New York.

Feb. 14, 1989.

Steven D. Riskin, Dept. of Labor, New York City, for plaintiff.

Holm Krisel O'Hara Urban & Johns (Vincent F. O'Hara, of counsel), New York City, for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This action was brought by the Secretary of Labor ("Secretary") to enforce certain provisions of Title IV of the Labor Management Reporting and Disclosure Act (LMRDA) which operate to ensure fair union elections. The Secretary claims that Local 471 of the Hotel, Motel & Restaurant Employees & Bartenders Union, AFL–CIO ("Local 471") illegally delayed the mailing of election material of a candidate for the Union's position of "Secretary–Treasurer/Business Manager" (hereafter simply "Business Manager"). The election under dispute took place in February of 1985. Since that time Local 471 held its next regularly scheduled election in February of 1988; there are no claims of illegality arising from this second election.

By this motion for summary judgment plaintiff requests an order setting aside the 1985 election and requiring a new Department of Labor ("DOL") supervised election for the position of Business Manager be held immediately. The usual statutory remedy for a violation of Title IV of the LMRDA is the setting aside of the tainted election with a new Department of Labor supervised election held in its place.

Defendant Local 471 argues against plaintiff's summary judgment motion on the grounds that the delayed mailing did not constitute a violation of the LMRDA or, if it was indeed a violation, that a subsequent pre-election mailing "cured" the violation. The defendant also moves to dismiss the Secretary's complaint because it was untimely filed in violation of the LMRDA and on the alternate claim that this action has been made moot by a supervening untarnished election.

### I. Background

Plaintiff, the Secretary of Labor, filed the complaint on November 22, 1985, to which the defendant, Local 471, interposed an answer on January 9, 1986. Discovery on this matter was closed on November 1, 1986. A pre-trial conference was held on January 7, 1987, whereupon this court scheduled a non-jury trial for April of that same year. In and around March of 1987, attorneys for both parties requested an extension of the trial date due to on going settlement negotiations. The court granted the requested extension. No further action was taken on this matter until plaintiff filed the motion for summary judgment in October of 1988.

The facts relevant to this motion are not in dispute. Local 471 is a labor organization which is subject to the provisions of Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481 *et seq.* The union represented approximately 1200 members, over a geographical area extending throughout much of upstate New York and Vermont, at the time of its regularly scheduled election on February 4, 5, and 6 of 1985. In that election the incumbent Business Manager, Wolfgang Hammer, was re-elected. The vote tally was:

| | |
|---|---|
| Wolfgang Hammer | 387 votes |
| Robert Belanger | 236 votes |
| Louis Diliberto | 24 votes |

Thus, of the approximately 1200 union members eligible to vote in the election, 647 cast a ballot on the position of Business Manager.

Though the union has other employees, the Business Manager is the only officer who works full-time on union business. In the 1985 election two incumbent office holders, Vice President Joseph O'Brien, and Executive Board member Judy Mirra who was running for President, lost their elections to non-incumbent challengers.

An organization called "471 Concerned Members" actively challenged the incumbent officials of the union for certain positions in the 1985 election. The Business Manager candidate for the 471 Concerned Members group was Robert Belanger—the individual whose complaint to the DOL led to this suit.

Prior to the election, Mr. Belanger sent a letter, dated November 15, 1984, to Local 471. The letter stated that Belanger was a candidate for the office of Business Manager and requested that he be contacted to arrange the distribution by mail of campaign literature to union members at his own expense. This letter, which was addressed to the incumbent Business Manager, Wolfgang Hammer, received no response. Robert Belanger sent a second letter, dated December 10, 1984, in which he again requested that he be contacted concerning the mailing. In the second letter Belanger warned Mr. Hammer that if he did not receive a response that he would file a complaint with the Department of Labor. Local 471 responded to Mr. Belanger by a letter dated December 14, 1984, which simply stated that "[w]e are in receipt of your letter of December 10, 1984 and will be acting upon your request and will provide you with necessary information as soon as we are able to do so." The union's response was signed by Mr. Hammer.

Mr. Belanger complained to the Department of Labor about the lack of mailings in December, 1984. By a letter dated January 3, 1985, Kamil Bishara of the DOL requested that Local 471 cooperate with requests of bona fide candidates for mailings. The union's attorney responded to the DOL's letter by requesting that all such complaints be referred to the union Election Committee.

The Election Committee for the 1985 election was comprised of eleven (11) members, six (6) appointed by the President and five (5) appointed by the Vice President. Mr. Belanger made no complaint to the Election Committee regarding the lack of mailings before the election took place. Mr. Belanger and Mr. Hammer were subse-quently nominated for the position of Business Manager at nomination meetings held on January 7, 8, and 9 of 1985.

Defendant Local 471's constitution and by-laws do not address the issue of the distribution of election literature. However, the Election Committee assumed the responsibility of organizing the mailings—issuing a set of "Rules for the 1985 Elections" to all candidates under cover of a January 15, 1985, letter from the committee's chairman. The Rules for the 1985 Elections provided for two planned mailings in which the clerical costs would be shared by all the candidates who participated in the mailings. Local 471 mailed election literature for all interested candidates to its members on January 23 and 30, 1985. As noted above, Mr. Hammer, the incumbent Business Manager won the February re-election.

Mr. Belanger filed a letter, dated February 11, 1985, with the union's Election Committee in which he protested the delayed mailings. The protest was denied. Belanger then appealed the Election Committee's decision by an April 20, 1985, letter to the International's General President. That appeal was denied by a letter dated September 3, 1985. It is agreed by the parties that these actions by Mr. Belanger exhausted his internal union remedies.

Belanger had also sent a letter, dated June 10, 1985, to the Department of Labor complaining about the defendant's February election. The DOL responded to the complaint in a letter dated July 8, 1985, stating that since Mr. Belanger's letter was not received until June 28, 1985, it was not timely under 29 U.S.C. § 482(a)(2). The DOL's letter pointed out that the complaint could be resubmitted within one calendar month after exhausting available union remedies under 29 U.S.C. § 482(a)(1).

After exhausting his internal union remedies Mr. Belanger resubmitted his election complaint by a letter dated September 19, 1985. The plaintiff claims that the letter was received at its Office of Labor Management Standards in Buffalo, New York on September 24, 1985. The September 24, 1985, date was noted on the bottom

left hand corner of this letter. Thereafter, the Secretary of labor determined that there was probable cause to bring suit and filed the complaint on November 22, 1985.

In February of 1988 Mr. Hammer won re-election to the position of Business Manager in an uncontested election. There are no allegations that the subsequent election was tainted with any illegal actions.

## II. Discussion

### The Statutory Framework

The legal issues in this action are governed by Title IV of the Labor–Management Reporting and Disclosure Act (LMRDA). "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 1746, 20 L.Ed.2d 763 (1968). The legislative history of Title IV reveals that "Congress, although committed to minimal intervention [in internal union affairs], was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV." Thus, "the freedom allowed unions to run their own elections was reserved for those elections which conform to the democratic principles" of Title IV. *Id.*

A key provision of Title IV is 29 U.S.C. § 481(c) which permits each candidate for office to communicate his election platform to the union members through the distribution of literature. This section provides in pertinent part:

> [*E*]*very local labor organization, and its officers, shall be under the duty,* enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principle office, *to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature* in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to

the use of lists of members. (emphasis added).

Plaintiff alleges that Local 471, by causing a one to two month delay in the mailing of Mr. Belanger's campaign literature violated this section of the LMRDA.

Interpretive regulations promulgated by the Assistant Secretary of Labor serve to clarify the statutory requirements of 29 U.S.C. § 481(c). These regulations provide in applicable part:

> 29 CFR § 452.67 Distribution of campaign literature.

> The Act imposes the duty on the union and its officers to comply with all reasonable requests of any candidate to distribute his campaign literature to the membership at his expense. When the organization or its officers authorize distribution of campaign literature on behalf of any candidate, similar distribution under the same conditions must be made for any other candidate, if he requests it. In order to avoid charges of disparity of treatment among candidates, it is advised that a union inform all candidates in advance of the conditions under which distribution will be made and promptly advise them of any change in those conditions.

> 29 CFR § 452.69 Expenses of campaign literature.

> ... Since labor organizations have an affirmative duty to comply with all reasonable requests of any candidate to distribute campaign literature (at the candidate's expense), a union rule refusing all such distributions would not be proper, even though applied in a nondiscriminatory fashion. In view of the fact that expenses of distribution are to be borne by the candidate a labor organization may not refuse to distribute campaign literature merely because it may have a small staff which cannot handle such distribution for all candidates. If this is the case, the organization may employ additional temporary staff or contract the job to a professional mailer.

> 29 CFR § 452.79 Opportunity to campaign.

There must be a reasonable period prior to the election during which office-seekers and their supporters may engage in the campaigning that the Act contemplates and guarantees. What is a reasonable period of time would depend on the circumstances, including the method of nomination and the size of the union holding the election, both in terms of the number of members and the geographic area in which it operates.... Such a delay would deny the candidate a reasonable opportunity to campaign prior to the election and would thus not meet the requirement for adequate safeguards to ensure a fair election.

29 CFR § 452.80 Bona fide candidates. A person need not be formally nominated in order to be a bona fide candidate entitled to exercise the [right to distribute campaign literature].... Thus, any qualified member seeking to be nominated and elected at a convention would be able to take advantage of the distribution rights even before the convention meets and thus attempt to influence members to select delegates favorable to his candidacy or to persuade the delegates to support his candidacy. A union may reasonably require that a person be nominated in order to be elected, but may not prevent a member who actively seeks office and is otherwise qualified from taking advantage of the campaign safeguards in the Act in an effort to gain the support necessary to be nominated.

Though these regulations are not binding on the courts, the Secretary's interpretive regulations must receive serious consideration. *See Donovan v. Sailors' Union of the Pacific,* 739 F.2d 1426, 1429 (9th Cir. 1984); *BLE International Reform Committee v. Sytsma,* 802 F.2d 180, 190 (6th Cir.1986).

■ Thus, it is very clear from the statutory and regulatory language that unions have a duty to provide campaign mailing services to candidates who request such mailings and are able to pay for them. These services must be provided in a reasonably timely manner considering the general circumstances of the campaign. Moreover, the candidate need not wait until he is nominated before he may request such a mailing. "Reasonableness" under section 481(c) primarily involves considerations of "consistency with the Act's command to unions to conduct free and democratic elections." *Donovan v. Metropolitan Dist. Council of Carpenters,* 797 F.2d 140, 143 (3rd Cir.1986) (citing *United Steelworkers v. Usery,* 429 U.S. 305, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977)).

■ To insure compliance with this election provision, congress provided that whenever a violation of 29 U.S.C. § 481 "may have affected the outcome of an election" that the election should be set aside and a new election held under the supervision of the Secretary of Labor. 29 U.S.C. § 482(c). Section 482(c) provides that:

If, upon a preponderance of the evidence *after a trial on the merits,* the court finds— ...

(2) that the violation of section 481 of this title *may have affected the outcome of an election,*

The court shall declare the election, if any, to be void and direct the conduct of a new election under [the] supervision of the Secretary and so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. (Emphasis added).

It should be noted that the "trial upon the merits" language of § 482(c) "is not to be read literally and summary judgment lies in a proper case." *Usery v. International Organization of Masters, etc.,* 538 F.2d 946, 949 n. 5 (2nd Cir.1976); *see Brennan v. Local Union No. 639,* 494 F.2d 1092, 1094–98 (D.C.Cir.1974). Therefore, to the extent that defendant Local 471 claims that a trial is statutorily *required,* and that summary judgment cannot be had under any circumstances, it is in error. If there are no material issues of fact in dispute and the violation of § 481 "may have affected" the election results then summary judgment would be proper.

Title IV of the LMRDA "gives the Secretary of Labor exclusive authority to bring post election challenge suits." *Donovan v. CSEA Local Union 1000,* 784 F.2d 98, 102

(2nd Cir.1986); *See Trbovich v. United Mine Workers,* 404 U.S. 528, 92 S.Ct. 630, 632–36, 30 L.Ed.2d 686 (1972). "The first step in Title IV enforcement is for a union member to challenge the election through internal union procedures. The Secretary of labor has no duty or authority to investigate a complaint until union procedures have been exhausted or have proven futile." *Donovan v. CSEA Local Union 1000,* 784 F.2d at 103. Both parties agree that Mr. Belanger exhausted his internal union remedies. "If the Secretary finds probable cause to believe that a violation has occurred, he must bring an action to set aside the election within 60 days of the filing of the union members' complaint." *Id.; see* 29 U.S.C. § 482(b).

*The Motion to Dismiss*

■ Defendant argues that this court should dismiss the complaint on the basis that the Secretary of Labor filed the complaint beyond the 60 day § 482(b) deadline. Sections 482(a) and (b) read in applicable part:

(a) Filing of complaint; presumption of validity of challenged election. A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging a violation of any provision of 401 [29 U.S.C. § 481] ...

(b) Investigation of complaint; commencement of civil action by Secretary; jurisdiction; preservation of assets. The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title [29 U.S.C. §§ 481 et seq.] has occurred and has not been remedied, he shall, *within sixty days after the filing* of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office ... (emphasis added).

The Secretary, on the other hand, claims that the complaint was properly filed within the 60 day period. In the alternative, plaintiff argues that, even should this court determine that the 60 day rule was violated, it should still find that it has jurisdiction due to the important public rights which are sought to be vindicated.

As noted above, Mr. Belanger initiated his complaint within Local 471 on February 11, 1985; his internal union remedies being exhausted with the denial of his appeal by the International's President on September 3, 1985. Therefore, under § 482(a) Belanger was be able to submit timely complaints during the periods ranging from one month following either May 11, 1985 (three months after the complaint was initially filed), or September 3, 1985 (the date that Belander exhausted his internal union remedies). Belanger submitted his first complaint to the Secretary of Labor by a letter dated June 10, 1985. The DOL claims that no action was taken upon this first complaint because it was not received (and therefore filed) until June 28 of that same month. Mr. Belanger resubmitted his complaint to the Secretary by a letter dated September 19, 1985, which the DOL claims was received on September 24. The Secretary filed this action in federal court on November 22, 1985. Defendant claims that there has not been sufficient proof of the above stated filing dates to assure that the plaintiff has in fact complied with the sixty day rule.

However, the 60 day filing requirement *does not* serve as a jurisdictional statute of limitations barring court review of actions filed beyond that period. Rather, the time limit "is a directive to the Secretary of Labor and the court should consider the rights of all parties affected, ... in order to evaluate what action will best serve the purposes of the statute ..." that purpose being "to protect the individual union members by insuring free and democratic elections." *Marshall v. Local Union 1374, International Association of Machinists and Aerospace Workers,* 558 F.2d 1354,

1357–58 (9th Cir.1977); *see also Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.") This court finds that it is highly likely that the November 22, 1985, complaint was filed in a timely manner. However, even if the plaintiff's complaint was not timely filed this court would still, given the circumstances of the case, exercise its discretion to permit an evaluation of the plaintiff's claims on the merits. Therefore, defendant's motion to dismiss the complaint because it was not filed within the 60 day statutory time limit, is denied.

*The Mootness Claim*

■ A subsequent untainted union election does not moot the lawsuit of the Secretary of Labor concerning a violation of Title IV in a prior election. As the Supreme Court stated in *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*:

> The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election.

389 U.S. 463, 88 S.Ct. 643, 649–50, 19 L.Ed. 2d 705 (1968). The Court went on to hold that:

> when the Secretary of Labor proves the existence of a § 401 [29 U.S.C. § 481] violation that may have affected the outcome of a challenged election, the fact that the union has already conducted another unsupervised election does not deprive the Secretary of his right to a court order declaring the challenged election void and directing that a new election be conducted under his supervision.

*Id.* 88 S.Ct. at 650. This thinking was also adopted by the Second Circuit in *Usery v. International Organization of Masters,* *etc.,* which held that "the supervening unsupervised election *per se* did not render the Secretary's pending action moot," 538 F.2d at 950.

Defendant Local 471 argues that this suit should be dismissed as moot due to an intervening unsupervised union election. Defendant attempts to distinguish the strong case precedents against its position by arguing that those cases were concerned with other provisions of section 481. The defendant is in error. The broad holdings of those cases were clearly meant to encompass *all* of the provisions of 29 U.S. C. § 481 not simply one narrow portion. *See e.g. Marshall v. Local Union 478, Laborers' International Union of North America,* 461 F.Supp. 185, 190 (S.D.Fla. 1978) (and cases cited therein). Therefore this court denies defendant's motion to dismiss this action as moot.

*The Summary Judgment Motion*

■ "Under Fed.R.Civ.P. 56(c) a trial judge shall grant summary judgment if the evidence offered demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'... The burden rests on the moving party to demonstrate the lack of a genuine issue of fact, ... and the record 'must be viewed in the light most favorable to the party opposing the motion.'" *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2nd Cir.1987). It is clear that there are no material facts in dispute and that this case is one which is ripe for summary judgment.

29 U.S.C. § 482(c) requires the court to first determine whether there has been a violation of § 481 before it may order a remedial election. "This in itself does not suffice, however, since the statute requires an additional finding that such violation 'may have affected the outcome of an election.'" *Usery v. International Organization of Masters, etc.,* 422 F.Supp. 1221, 1226 (S.D.N.Y.1976), *aff'd,* 538 F.2d 946 (2nd Cir.1976). In *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 1752–53, 20 L.Ed.2d 763 (1968) the Supreme Court held that a violation of § 481 established a *prima facie*

case that the outcome of the election may have been affected. Thereafter, the burden shifts to the union to show that the outcome of the election was not affected.

> Thus, once a Section 481 violation has been demonstrated, a very substantial burden falls upon a defendant union. It must show by a preponderance of the evidence that the particular violation did not affect the outcome of the election. Until it does so, the presumption remains that such violation might have had an effect on the results, and this presumption of mere possible influence suffices to warrant a new supervised election.

*Usery v. International Organization of Masters, etc.*, 422 F.Supp. at 1226. Given this framework the court must now consider the merits of plaintiff's summary judgment motion.

The plaintiff Secretary of Labor has met his burden of establishing a *prima facia* case that the defendant union violated § 481(c) of the LMRDA. Mr. Belanger's mailings to the entire union membership were delayed by the inaction of the very person whom he was running against. Instead of an early electorial appeal to the members of Local 471 the Defendant Union restricted Belanger to concurrent mailings with the rest of the candidates on January 23 and 30 of 1985. This court finds, that given the size and large geographical distribution of the union, the incumbency of Mr. Hammer, the importance of the Business Manager position and the short time period over which Mr. Belanger sought to conduct his campaign, that the request of Mr. Belanger to have Local 471 mail campaign literature to the entire membership was a reasonable request under the terms of § 481(c) and that this request was unreasonably denied.

As stated in 29 CFR § 452.79, "[t]here must be a reasonable period prior to the election during which office-seekers and their supporters may engage in the campaigning that the Act contemplates and guarantees." This opportunity to campaign extends to bona fide candidates whether or not the union's nominating process has been initiated. 29 CFR § 452.80.

Local 471's failure to provide timely mailings was therefore not reasonably consistent with the Act's "command to unions to conduct free and democratic elections." *United Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977); *see Donovan v. Metropolitan Dist. Council of Carpenters*, 797 F.2d 140, 143 (3rd Cir.1986). The defendant's delay in conducting the campaign mailings in 1985 "may have affected the outcome" of the election. 29 U.S.C. § 482(c)(2).

Having made out a *prima facie* case "a very substantial" burden falls upon the defendant union. The Defendant argues that Mr. Belanger had a strong campaign organization with more money and volunteers than the incumbent Business Manager. Moreover, it appears that Mr. Belanger accomplished an unspecified number of mailings to various union members outside of those made by Local 471 on January 23 and 30 of 1985. Mr. Hammer also states that he made use of the same two mailings as did Mr. Belanger, so that he, Hammer, received no unfair advantage by the delayed mailing. The defendant also takes note of the fact that two incumbent office holders were defeated in the February 1985 election. Given the margin of Mr. Belanger's defeat (approximately 150 votes), the cause of Mr. Belanger's defeat may have been a perceived difference between the caliber of the candidates rather than barriers to effective campaigning.

However, this court finds that the defendant has failed to meet the heavy burden of disproving the plaintiff's *prima facie* case that Local 471's activities may have affected the election's outcome. The points raised by the defendant, while not being unfounded, are still too speculative to defeat plaintiff's *prima facie* case. Therefore, the court finds that the defendant's conduct during the 1985 campaign for the position of Secretary–Treasure/Business Manager constituted a violation of Title IV of the LMRDA.

*The Appropriate Remedy*

■ The court now turns to the appropriate remedy in this case. The Secretary asserts that the 1985 election should be set

aside and a new DOL supervised election for the position of Business Manager be held immediately. The court agrees with the plaintiff to the extent that a supervised election should be ordered. However, for the reasons that follow, this court has determined that *no additional election* should be held. Rather, the DOL will be permitted to supervise the next regularly scheduled election for the position of Business Manager, which, according to the Defendant's by-laws, is to be held in February of 1991.

In reaching this determination, the court relies heavily on the analysis and holding of the Second Circuit in *Usery v. International Organization of Masters, Etc.*, 538 F.2d 946, 950–52 (2nd Cir.1976). In that case the DOL had brought a suit to enforce certain provisions of Title IV of the LMRDA which were allegedly violated during the union's 1971 election. Before the district court could review the matter, a second regularly scheduled union election took place in 1974. This second election, which was not tainted by a Title IV violation, resulted in the defeat of a number of incumbent union officials. For a variety of reasons, the case did not reach the Second Circuit until 1976—one year prior to the union's next regularly scheduled election. While affirming the district court's decision that Title IV required a supervised election, the circuit court held that equitable considerations as to " 'the practicality' of the situation ... commands a remedy" other than an immediate supervised election. *Id.* at 950. Instead of an immediate election, the court ordered the DOL to supervise the next regularly scheduled election. *Id.* at 952.

The *Usery* court found that the action of the Secretary of Labor in demanding an immediate election was so "arbitrary" that it could not be sustained. In reaching this decision the court reasoned:

> The persons now holding office were elected without electoral taint. The ... incumbents who benefitted from the unlawful 1971 election were, with the exception of the secretary-treasurer, defeated in the 1974 election.... The Secretary [of Labor] failed to make his mo-

tion for summary judgment before the regular election of 1974, thus permitting the incumbent, ..., if he had won, to have continued in office until final judgment. We think the public policy implicit in the Act is ill-served when court actions by the Secretary are allowed to drag on interminably while the target of the attack remains in office.... Nor should we be unmindful of the statutory admonition that "[n]o labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter." 29 U.S.C. § 483.... We are concerned, moreover, with the question of possibly unnecessary expense to the union members.

*Id.* at 950. Many of the same factors considered by the *Usery* court apply to the case presently before this court.

Here, there has been a long delay in prosecuting this action by the Secretary. It appears that this case was ripe for summary judgment as far back as January of 1987. Since that time there has been an intervening untainted union election. A new election in mid-term would be an added expense to the members of Local 471 while being of little value. The present Business Manager, Mr. Wolfgang Hammer, won that office in a 1988 election in which he was unopposed. Moreover, this case is not concerned with a "standing" violation of Title IV such as union election procedures, constitutional provisions, or by-laws which themselves foreshadow continued violations of the LMRDA. The court also notes that the violation of Title IV could more appropriately be characterized as a technical violation than a gross illegality. As the facts reveal, two incumbent office holders *lost* elections in the 1985 race.

Accordingly, the court has determined that the Department of Labor will be permitted to supervise the next regularly scheduled election for defendant Local 471's position of Secretary–Treasurer/Business Manager. That election is scheduled to be held in February of 1991. The re-

quest of the Secretary of Labor for an order requiring the defendant to conduct an *immediate* election is denied. This resolution of the matter is clearly "lawful and practicable, in conformity with the constitution and by-laws of the labor organization." *Usery* at 952; 29 U.S.C. § 482(c).

In summary, this court holds:

(1) that the motion of the defendant to dismiss the complaint as moot and/or untimely filed is denied;

(2) that the plaintiff's motion for summary judgment under Fed.R.Civ.P. 56 is granted; and

(3) that the Department of labor is permitted to supervise the defendant's next regularly scheduled election for the position of Secretary–Treasurer/Business Manager in order to assure compliance with Title IV of the LMRDA.

IT IS SO ORDERED.